# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Liberty Towers, LLC.

  **Plaintiff**,

  v.

Zoning Hearing Board of the Township
Lower Makefield, Bucks County,
Pennsylvania, et al.

  **Defendants**.

Civil Action No.: 10-1666

## MEMORANDUM OPINION

**Tucker, J.**                          September___, 2010

  Presently before the Court is Defendant Lower Makefield Township's Motion to Dismiss (Doc. 9); Plaintiff Liberty Towers, LLC's Response in Opposition thereto (Doc. 12); Defendant Nathan M. Edelstein's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 11) and Plaintiff Liberty Towers, LLC's Response in Opposition thereto (Doc. 13). For the reasons set forth below, this Court denies both motions.

## FACTUAL BACKGROUND[1]

  Plaintiff Liberty Towers, LLC ("Liberty"or "Liberty Towers") asserts a claim against Defendant Zoning Hearing Board of the Township of Lower Makefield, Bucks County, Pennsylvania ("the Zoning Hearing Board") pursuant to the Telecommunications Act of 1996, 47 U.S.C.§ 332(c) (2010) ("the TCA"or "the Act") for denying its application for a use variance contrary to the Act's requirements. Liberty Towers is a limited liability company that constructs

---

[1] The following facts are gleaned from the Complaint and taken as true in the light most favorable to Plaintiff, as the non-moving party.

and operates wireless telecommunication facilities. The Zoning Hearing Board is a political subdivision of Bucks County, Pennsylvania that has the authority to either approve or deny applications for use variances to construct wireless communication facilities.

Pursuant to section 200-28A of Lower Makefield Township's zoning ordinance, a variance is required to permit certain areas, including the area selected by Plaintiff, to be utilized as a wireless telecommunication facility. In September 2009, Liberty Towers submitted an application to the Zoning Hearing Board requesting a use variance to construct and operate a wireless telecommunication facility on the property known as the Brookside Swim Club. (Compl. ¶ 6). Both Sprint and T-Mobile sought to install communication antennas on the proposed facility. (Compl. ¶ 7). Pursuant to licenses granted by the Federal Communications Commission ("FCC"), Sprint and T-Mobile are authorized to provide wireless communication services in Lower Makefield Township. (Compl. ¶ 8). These licenses require both Sprint and T-Mobile to provide wireless communication services at a level sufficient to offer adequate service to the population within Lower Makefield Township. (Compl. ¶ 11). Plaintiff alleges that both companies have identified an area in Lower Makefield Township where there is a significant gap in service. (Compl. ¶15).

The Zoning Hearing Board held public hearings to review Liberty Tower's application on October 6, 2009, November 2, 2009, January 13, 2010 and February 16, 2010. (Compl. ¶ 21). During these hearings, Liberty Towers presented evidence demonstrating that both Sprint and T-Mobile have significant gaps in wireless communication service in Lower Makefield Township. (Compl. ¶ 22). Liberty Towers also presented evidence demonstrating that the construction of the proposed wireless telecommunication facility would allow both Sprint and T-Mobile to provide adequate service to the residents of Lower Makefield Township pursuant to their FCC

licensing requirements. (Compl. ¶ 22). On February 16, 2010, the Zoning Hearing Board issued a written decision and order denying Liberty Tower's application for the use variance. (Compl. ¶ 24).

On April 15, 2010, Liberty Towers appealed the Zoning Hearing Board's order denying its application for a variance in the Bucks County Court of Common Pleas. At this same time, Liberty Towers commenced an action in this Court, asserting that the denial of its application for a use variance was a violation of the TCA. Count I of Plaintiff's Complaint alleges that the Zoning Hearing Board's denial of Liberty Tower's application had the effect of prohibiting the provision of personal wireless service, contrary to the requirements of 42 U.S.C. § 332(c)(7)(B)(i)(II). (Compl. ¶ 31). Count II of Plaintiff's Complaint alleges that the Zoning Hearing Board violated the requirement of 47 U.S.C.§ 332(c)(7)(B)(iii), requiring that a denial of a request to construct personal wireless services facilities be in writing and supported by substantial evidence contained in a written record. (Compl. ¶ 34)

On May 6, 2010, Nathan Edelstein filed a Motion to Intervene (Doc. 3) as a defendant in the instant action. On May 11, 2010, Lauren Templeton filed a Motion to Intervene (Doc. 4) as a defendant in this case. Lastly, on May 12, 2010, Lower Makefield Township filed a Motion to Intervene (Doc. 5) as a defendant in this case. This Court issued an Order on June 12, 2010 (Doc. 8) granting each of these motions. Defendants have moved to dismiss, pursuant to Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction and pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. Defendants argue that Plaintiff lacks standing to sue under the TCA. Alternatively, Defendants argue that this Court lacks jurisdiction because the claims do not present a case or controversy under Article III of the United States Constitution. The Court now addresses the pending motions.

# LEGAL STANDARD

## A. Motion to Dismiss Pursuant to Federal Rule 12(b)(1)

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), dismissal is warranted where a court lacks subject matter jurisdiction over a case. Rule 12(b)(1) motions are either facial or factual challenges. CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008). A facial attack concerns the sufficiency of the pleadings, whereas a factual attack is a dispute over the existence of certain jurisdictional facts alleged by the plaintiff. Id. (citing United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007)). "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). By contrast, when a defendant attacks subject matter jurisdiction "in fact," the court is "free to weigh the evidence and satisfy itself whether it has power to hear the case." Carpet Group Int'l v. Oriental Rug Imps. Ass'n, Inc., 227 F.3d 62, 69 (3d Cir. 2000) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). In reviewing a factual attack, the court is not confined to the allegations of the complaint. Cestonaro v. United States, 211 F.3d 749, 754 (3d Cir. 2000). No presumption of truthfulness attaches to the plaintiff's allegations, "and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Carpet Group Int'l, 227 F.3d at 69 (citation omitted). The plaintiff bears the burden of persuasion regardless of whether the challenge is facial or factual. Henderson v. Nationwide Mut. Ins. Co., 169 F. Supp. 2d 365, 367-368 (E.D. Pa. 2001).

**B. Motion to Dismiss Pursuant to Federal Rule 12(b)(6)**

On a motion to dismiss for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000). While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997). On the contrary, "[t]he pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d ' 1357 at 340). Unlike a motion to dismiss under Rule 12(b)(1) where the plaintiff always has the burden of persuasion, when the matter involves a motion to dismiss under Rule 12(b)(6), the moving party has the burden of persuasion. See Kehr Packages, Inc., 926 F.2d at 1409.

**DISCUSSION**

Congress enacted the TCA to provide "'a pro-competitive, de-regulatory national policy framework designed to rapidly accelerate private sector deployment of advanced

5

telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition." APT Pittsburgh Ltd. P'ship v. Penn Twp., 196 F.3d 469, 473 (3d Cir. 1999) (quoting H.R. Conf. Rep. No. 104-458 (1996), reprinted in 1996 U.S.C.C.A.N. 10, 1124)). To that end, Congress set out to reduce "the impediments imposed by local governments upon the installation of facilities for wireless communication, such as antenna towers." City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 115, 125 S. Ct. 1453, 161 L. Ed. 2d 316 (2005). Section 332(c)(7) of the Act places limitations on the general authority of state or local governments or instrumentalities thereof to make "decisions regarding the placement, construction, and modification of personal wireless service facilities." 47 U.S.C.§ 332(c)(7)(A).

The instant action involves two of the limitations placed on state and local governments. First, section 332(c)(7)(B)(i)(II) provides that "regulation of the placement, construction, and modification of personal wireless service facilities by any state or local government...shall not prohibit or have the effect of prohibiting the provision of personal wireless services." Id. at § 332(c)(7)(B)(i)(II). In addition, section 332(c)(7)(B)(iii) requires that any denial of a request to place, construct, or modify personal wireless service facilities must "be in writing and supported by substantial evidence contained in a written record." Id. §337(c)(7)(B)(iii). To ensure enforcement of the Act's mandates the TCA authorizes "any person adversely affected by a final action or failure to act by a State or local government or any instrumentality thereof...[to] commence an action in any court of competent jurisdiction." Id. at § 332(c)(7)(B)(v).

In their respective motions to dismiss, Defendants request that this Court strike both of Plaintiff's claims under the TCA. The Township raises three arguments in support of its motion to dismiss: first, that Plaintiff lacks standing to bring this action under the TCA; second, that this action is not ripe for federal judicial review; and, third, that Plaintiff has not properly plead that

6

there is a significant gap in service within the meaning of Section 332(c)(7)(B)(ii)(II). Like, Defendant Township, Defendant Edelstein asks this Court to dismiss the instant action on the grounds that Liberty Towers lacks sufficient standing under the TCA to confer this Court with subject matter jurisdiction.

**I.     Standing**

This Court rejects Defendants' argument that Liberty Towers lacks standing to pursue this action. Defendants contend that, pursuant to Section 332 of the TCA, Liberty Towers lacks standing because it is not a telecommunications carrier or service provider but merely constructs and operates wireless telecommunication facilities. Defendants' interpretation of the TCA is inconsistent with both the language of the Act and sound precedent in many circuit courts where non-telecommunication companies have pursued claims under the Act. See Lawrence Wolf Cap. Management Trust v. City of Ferndale, 61 Fed. Appx. 204 (6th Cir. 2003) (where Plaintiff, the owner of a building, initiated an action against the City of Ferndale regarding its application for a use variance to place an antenna on its property to be used by AT&T); Second Generation Prop., L.P. v. Town of Pelham, 313 F.3d 620 (1st Cir. 2002) (where Second Generation, a landowner, initiated an action against the Town of Pelham after being denied permission to build a wireless communication tower on its land); Preferred Sites LLC v. Troup County, 296 F.3d 1210 (11th Cir. 2002) (where Preferred Sites, a tower operator initiated an action against Troup County after the county denied its application for conditional use approval to construct a multiple user-wireless communication tower).

The plain language of the Act makes clear that Liberty Towers has standing to pursue this claim. The Act provides in pertinent part that:

> *Any* person adversely affected by any final action or failure to act by a

7

> State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.

47 U.S.C. § 332(c)(7)(B)(v). (emphasis added)

The TCA explains that the term "person" includes an "individual, partnership, association, joint-stock company, trust, or corporation." Id. at § 153( 32). Liberty Towers is an association, and, thus, a person within the meaning of the Act. Secondly, the Zoning Hearing Board of Lower Makefield Township is an instrumentality of local government. Lastly, Liberty Towers has been adversely affected by the Zoning Hearing Board's denial of its application as it cannot construct its proposed telecommunications facility. Accordingly, this Court finds that Liberty Towers has standing to pursue a claim under the TCA.

## II. Ripeness

Having determined that Liberty Towers has standing to pursue this claim under the TCA, this Court turns to Defendants' contention that the instant action is not ripe for federal judicial review. Article III, section 2 of the United States Constitution requires an actual case or controversy for a federal court to have jurisdiction. One aspect of a determination of the existence of a case or controversy is whether the matter is ripe for resolution. The doctrine is aimed at preventing "the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Labs v. Gardner, 387 U.S. 136, 148-49, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967).

8

To resolve the issue of ripeness here this Court must determine whether there has been a "final action" by the Zoning Hearing Board. In Abbott, the Supreme Court made clear that a matter is not ripe for adjudication unless a court finds that the challenged agency action is a final action within the meaning of Section 10 of the Administrative Procedure Act. See id. at 149. "[T]he core question in determining the finality of an agency's action is whether the agency has completed its decision making process, and whether the result of that process is one that will directly affect the parties." Franklin v. Massachusetts, 505 U.S. 788, 797, 120 L. Ed. 2d 636, 112 S. Ct. 2767 (1992).

The Third Circuit considers the following factors in assessing the finality of an agency's action: "(1) whether the decision represents the agency's definitive position on the question;( 2) whether the decision has the status of law with the expectation of immediate compliance; (3) whether the decision has immediate impact on the day-to-day operations of the party seeking review; (4) whether the decision involves a pure question of law that does not require further factual development; and (5) whether immediate judicial review would speed enforcement of the relevant act." CEC Energy Co., Inc. v. Pub. Serv. Comm'n of Virgin Islands, 891 F.2d 1107, 1110 (3d Cir. 1989) (citing Solar Turbines, Inc. v. Seif, 879 F.2d 1073, 1080 (3d Cir. 1989).

Applying each of these prongs to the instant action, it is readily apparent that Liberty Towers has satisfied the test. First, the Zoning Hearing Board's February 16, 2010 order and accompanying memorandum denying Plaintiff's application for a use variance at the Brookside Swim Club represented the Board's definitive position on Plaintiff's application. The order was issued after multiple hearings, discussion and presentation of evidence. Secondly, the order had the status of law as it expressly prohibited Plaintiff from continuing its plan of constructing a telecommunication tower on the proposed site. Third, the Board's action undoubtedly had an

immediate impact on Plaintiff's day-to-day operation as Plaintiff had outstanding agreements with both sprint and T-Mobile with respect to their use of the proposed tower. Moreover, Plaintiff also entered into a lease agreement with T-Mobile for rental space at the proposed site. Fourth, no further factual development is necessary to determine this case as the sole issue which remains is whether the action taken by the Zoning Hearing Board violates the requirements of the TCA. Lastly, judicial review at this stage would speed enforcement and would not interfere with any on-going proceedings as the Zoning Hearing Board rendered its final determination in its February 16, 2010 order. As such, the Court finds that Zoning Hearing Board's Action was a final agency action and Plaintiff's claims are ripe for review.

This Court rejects Defendants' argument that the existence of a parallel proceeding in state court renders this case unripe for federal judicial review. Federal courts have a "virtually unflagging obligation" to exercise their properly invoked jurisdiction. <u>Colorado River Water Conservation District v. United States</u>, 424 U.S 800, 817, 47 L. Ed. 2d 483, 96 S. Ct. 1236 (1976). The general rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Id. (quoting <u>McClellan v. Carland</u>, 217 U.S. 268, 282, 54 L. Ed. 762, 30 S. Ct. 501 (1910)); <u>see</u> <u>also</u> <u>Harris v. Pernsley</u>, 755 F.2d 338, 345 (3d Cir.) This rule is so even where, as here, there is an action in both federal and state court involving the same issue and parties.

### III. Sufficiency of Pleadings.

Defendant Township further contends that Plaintiff has not properly plead that there is a significant gap in coverage in Lower Makefield Township. This Court rejects the Township's argument that Liberty Towers did not properly plead that there is a significant gap in coverage in the affected area of Lower Makefield Township. The Township contends that there is no

10

"prohibition of service" under section 332 (c)(7)(B)(ii)(II) of the Act because other wireless service providers are able to provide telecommunication service in the area that would be affected by the proposed tower. That section provides that regulations by state and local governments or instrumentalities thereof "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C.§ 332(c)(7)(B)(ii)(II). There has been a split amongst the circuit courts regarding the interpretation of this section of the Act.

The Third Circuit has held that in order to prove that a regulation had the effect of prohibiting the provision of personal wireless services; a wireless provider must show evidence of a significant gap. "In this context, the relevant gap, if any, is a gap in the service available to remote users. Not all gaps in a particular provider's service will involve a gap in the service available to remote users." Omnipoint Communs. Enters., L.P. v. Zoning Hearing Bd. of Easttown Twp., 331 F.3d 386, 398 (3d Cir. Pa. 2003). See also, Nextel W. Corp. v. Unity Twp., 282 F.3d 257, 265-266 (3d Cir. Pa. 2002) (noting that the relevant gap is defined from a user's perspective, rather than a particular provider's perspective). Other circuits, however, have interpreted this section of the TCA to mean that a significant gap exists "whenever a provider is prevented from filling a significant gap in *its own* service coverage." MetroPCS, Inc. v. City & County of San Francisco, 400 F.3d 715, 733 (9th Cir. Cal. 2005).

In response to the split amongst the circuit courts, the FCC issued a Declaratory Order on November 19, 2009 to clarify the meaning of this section of the TCA. See In re Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B), 24 FCC Rcd 13994, 14016 (F.C.C. 2009). In this Order, the FCC made clear that in order to maintain consistency with the Act's pro-competitive purpose, "the fact that another carrier provides service to an area is an inadequate defense under a claim that a prohibition exists." Id. at 14016. Thus, the FFC

explained that complete inability to access wireless communication is not required to make the determination that a significant gap in service exists within the meaning of the TCA.

Liberty Towers argues, and this Court agrees, that under well-established principles of administrative law, the FCC's Declaratory Ruling is entitled to deference from the federal courts. Chevron U.S.A. v. National Resources Defense Counsel, 67 U.S. 837 (1984). The Third Circuit has further recognized that "if a court of appeals interprets an ambiguous statute one way, and the agency charged with administering that statute subsequently interprets it another way, even that same court of appeals may not then ignore the agency's more recent interpretation." Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 502 (3d Cir. 2008) (citing Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 986 (2005)). Here, the FCC interprets this section of the act differently than the Third Circuit. According to the rule echoed in Levy, this Court is required to give deference to the FCC's interpretation. According to the FCC's interpretation, a provider must plead that there is a significant gap in service in any area for that particular service provider. Thus, this Court finds that Plaintiff has properly plead that there is a significant gap in service in the Lower Makefield Township area.

## **CONCLUSION**

For the foregoing reasons, the Court denies Defendants' respective motions to dismiss. An appropriate Order follows.

**BY THE COURT:**

**/s/ Petrese B. Tucker**
_____

**Hon. Petrese B. Tucker, U.S.D.J.**